## FISHER v. SELLERS.

4-8703                                     217 S. W. 2d 331

Opinion delivered February 14, 1949.

*Yingling & Yingling,* for appellant.

*W. D. Davenport* and *A. M. Coates,* for appellee.

ED. F. McFADDIN, Justice. This is a suit filed by a mother to set aside a deed which she made to her daughter in consideration of the daughter's promise to support and care for the mother. The mother claims there has been a failure of consideration. The Chancery Court canceled the deed; and the daughter has appealed.

636

In September, 1944, Mrs. Sellers (appellee), then past 76 years of age, executed a warranty deed to her home in Searcy to her daughter, Mrs. Fisher (appellant). The deed recited a consideration of $1.00, and other good and valuable considerations; and contained this language: "The 'other good and valuable consideration' as above mentioned, is as follows: The grantor and grantee herein are mother and daughter, respectively. Composing and being a part of the consideration herein is the agreement on the part of the grantee which is accepted and agreed to by the grantor that the grantee shall, during the grantor's lifetime, support, keep, maintain, provide and care for the grantor, with all the usual necessities of life. It is further agreed and understood, by the parties hereto, that they shall continue to use and occupy the herein conveyed premises as a home as they have prior to the execution of this conveyance."

When the deed was executed, the mother and daughter were living in the home described in the deed, and so continued until August, 1945, when Mrs. Sellers went to the home of her son, Alva Sellers, in Oklahoma. He had been to Searcy to see his mother, and she returned to Oklahoma with him. One of the points, on which considerable evidence was taken, was whether Mrs. Sellers was forced by Mrs. Fisher to go to Oklahoma for peace and quiet, or whether Mrs. Sellers went on a temporary visit and was persuaded by another son, Shad Sellers, and his wife, Hazel, not only to refuse to return to Searcy, but also to file this suit. At all events, Mrs. Sellers remained with Alva Sellers in Oklahoma until April 6, 1947, when she went to Helena, Arkansas, to live with her son, Shad Sellers.

This suit was filed on May 15, 1947, seeking to set aside the deed from Mrs. Sellers to Mrs. Fisher for alleged failure of consideration, it being claimed that Mrs. Fisher had failed and refused to support and care for Mrs. Sellers, as required by the deed, and it being further claimed that Mrs. Fisher, by intimidation, abuse and insults, had driven her mother from the home. At the conclusion of the evidence (taken over a protracted period),

the Chancery Court entered a decree finding that Mrs. Sellers was entitled to have the deed canceled, and was entitled to exclusive possession of the property. From that decree there is this appeal. The appellant claims that the Chancery Court's decree is contrary to the preponderance of the evidence.

I. *Duress.* There was some evidence offered by Mrs. Sellers tending to show that she was sick at the time that the deed was executed, and that Mrs. Fisher practiced duress to obtain the deed; but this evidence is too weak to support the decree. A reputable attorney, not connected with the present litigation, prepared the deed in September, 1944, at the request of Alva Sellers. The deed was fully explained to Mrs. Sellers, and she understood what she was doing, and made what then seemed to be a good bargain.

II. *Failure of Consideration.* This is the real issue to which most of the evidence was directed. Our cases hold that when a deed is executed in consideration of future support and maintenance—as here—then, if the grantee fails to fulfill the provisions of the deed, the grantor may sue at law for damages, or may sue in equity to cancel the deed for failure of consideration.[1] *Salyers* v. *Smith,* 67 Ark. 526, 55 S. W. 936; *Whittaker* v. *Trammell,* 86 Ark. 251, 110 S. W. 1041; *Priest* v. *Murphy,* 103 Ark. 464, 149 S. W. 98; and *Goodwin* v. *Tyson,* 167 Ark. 396, 268 S. W. 15.

---

[1] In *Goodwin* v. *Tyson,* 167 Ark. 396, 268 S. W. 15, we quoted from earlier cases as to the reason for the rule on failure of consideration: " 'The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract, and therefore vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and, where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to, regardless of any remedy that the grantor may have had also at law. See *Salyers* v. *Smith,* 67 Ark. 526, 55 S. W. 936; 4 R. C. L. p. 509, § 22; *Russell* v. *Robins,* 247 Ill. 510, 93 N. E. 324, 139 Am. St. Rep. 342; *Stebbins* v. *Petty,* 209 Ill. 291; *Spangler* v. *Warborough,* 23 Okla. 806; see, also, *Bruer* v. *Bruer,* 109 Minn. 260; *Abbott* v. *Sanders,* 80 Vt. 179; *Glocke* v. *Glocke,* 113 Wis. 303. See, also, case note 43 L. R. A., N. S. 918-925.' " See annotation in 130 A. S. R. 1039 entitled "Conveyances in Consideration of Support of Grantor by Grantee." See, also, 9 C. J. 1184; 12 C. J. S. 986; and annotation in 112 A. L. R. 670.

Our cases hold that the agreement to support, maintain, provide and care for the grantor requires not only furnishing the necessary food and clothing, but also furnishing a home suitable to the grantor's condition in life, and one in which the grantor may live in comfort. We have said: "It would be idle to say that he (grantee) complied with his contract by merely administering to their (grantors') physical necessities when by his conduct he made it impossible for them to use or enjoy these necessities in ease and peace and had actually rendered their condition in life intolerable." *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286. See, also, *Goodwin* v. *Tyson, supra.*

The cases also hold that if the grantor voluntarily leaves the home, or refuses the proffered and adequate support and maintenance, without the grantee being at fault, then, during the time the grantor renders performance impossible, he cannot claim that the grantee is violating the contract. *Russell* v. *Robins,* 247 Ill. 510, 93 N. E. 324, 139 A. S. R. 342; *Brooks* v. *Richardson,* 144 Ky. 102, 137 S. W. 840; *Scott* v. *Scott,* 89 Wis. 93, 61 N. W. 286. See case note in 25 L. R. A., N. S. 932 entitled, "May a Grantor Rescind a Deed Executed in Consideration of Future Support where Performance by Grantee is, Without Fault on his Part, Prevented by the Grantor." See, also, 9 C. J. 1186 and 12 C. J. S. 988.

With the foregoing holdings as background, we come to the evidence here. Mrs. Sellers—past 80 years of age at the time of the trial—testified that Mrs. Fisher was cruel and otherwise mean to her, and required her to continue to pay a part of the expenses of the home; and forced her to leave the home and seek haven in Oklahoma. Mrs. Sellers was undoubtedly a most pathetic figure: after rearing several sons and a daughter, she was left in her old age, buffeted by the winds of adversity with— according to her testimony—a faithless and selfish daughter bent on obtaining the mother's earthly possessions. But Mrs. Sellers' able counsel offered no supporting witnesses to her version of conditions; so the question arises whether her testimony presented the real fac-

tual situation or only one which the appellee had imagined, aided and encouraged by her son, Shad, and his wife, who—according to some witnesses—were intent on procuring a cancelation of the deed so that they might obtain the property.

Alva Sellers—the son from Oklahoma—stated that his sister had been good to their mother, and that Mrs. Sellers went to Oklahoma for only a temporary visit. Testimony was elicited from Alva Sellers' wife to the effect that Shad Sellers and his wife had poisoned the appellee's mind against Mrs. Fisher. We believe this to be true, because at least nine relatives and neighbors testified that Mrs. Fisher was a kind and thoughtful daughter, and that Mrs. Sellers' testimony was the result of her being imposed upon by those who would profit from the cancelation of the deed. In the light of the evidence of these witnesses, we reach the conclusion that the decree of the Chancery Court should be reversed; but because of the matters now to be mentioned, we conclude that the cause should be remanded to the Chancery Court to retain jurisdiction of the case to see that the rights of all parties are protected.[2]

III. *Remand.* In the deed Mrs. Sellers reserved for her lifetime the joint use of the property with Mrs. Fisher. The evidence shows that during the pendency of this suit Mrs. Fisher urged Mrs. Sellers to return to the home, and Mrs. Sellers refused to do so unless she were provided a bedroom for her sole occupancy. The evidence does not show how many bedrooms are in the home. If there are as many as two, then Mrs. Sellers might be entitled to the exclusive occupancy of one of them. If she were denied such, then she might claim that she was being denied the joint use of the home for life, and also was being refused the support and maintenance promised her in the deed. Furthermore, the disposition of the present appeal would not be *res judicata* on Mrs. Sellers' right to claim failure of consideration as to events occurring after the decree from which comes this appeal.

[2] In the case of *Brooks* v. *Richardson,* 144 Ky. 102, 137 S. W. 840, the Court kept the case on the docket. See, also, *Soper* v. *Cisco,* 85 N. J. Eq. 165, 95 Atl. 1016.

Therefore, we remand this cause to the Chancery Court, to allow the parties an opportunity to readjust themselves in the light of this opinion; and then for the Chancery Court to determine whether in good faith Mrs. Fisher is: (1) giving Mrs. Sellers joint use of the home, (2) maintaining and supporting Mrs. Sellers, and (3) affording her the ease and peace to which she is entitled under the provisions of the deed and our holdings in similar cases already cited. On the basis of that determination, the Chancery Court may then make such disposition of this case as the facts may require. This being a proceeding in equity, we may adjudge the costs as seem to us to be equitable (*Skelly Oil Co.* v. *Johnson,* 209 Ark. 1107, 194 S. W. 2d 425); so we adjudge the costs of all courts against the appellant.